1

2

3

**Quarles & Brady** LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, Arizona  85004-2391
TELEPHONE 602.229.5200

4

5

Jeffrey H. Wolf (#011361)
jeffrey.wolf@quarles.com
Aaron C. Schepler (#019985)
aaron.schepler@quarles.com

6

7

Attorneys for Defendant Gold's Gym
Franchising, LLC

8       IN THE UNITED STATES DISTRICT COURT

9                 DISTRICT OF ARIZONA

10

11

Michael P. Huyge, individually and on behalf
of all others similarly situated,

CV-13-2378-PHX-SRB

12                    Plaintiffs,

**MOTION TO DISMISS ON BEHALF OF GOLD'S GYM FRANCHISING, LLC**

13            vs.

14

15

Gold's Gym Franchising, LLC and Fitness
Alliance, LLC,

(Oral Argument Requested)

16                    Defendants.

17

18       Defendant Gold's Gym Franchising, LLC hereby moves the Court to dismiss

19   Plaintiff's First Amended Class Action Complaint (the "complaint" or "amended

20   complaint") [Dkt. #25] in its entirety, pursuant to Rule 12(b)(6) of the Federal Rules of

21   Civil Procedure, on the ground that it fails to state a claim upon which relief may be

22   granted.    This motion is supported by the following memorandum of points and

23   authorities and the entire court record.

24

25

26

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

With his amended complaint, Plaintiff swings and misses – again.  In his initial complaint, he named Gold's Gym International, Inc. ("GGI") as a defendant.  After GGI filed its motion to dismiss [Dkt. #18], Plaintiff amended his complaint [Dkt. #25] to substitute another Gold's Gym®-related entity in GGI's place.  But his claims against Gold's Gym Franchising, LLC ("GGF") are no more meritorious than his claims against GGI.

GGF is the franchisor of health and fitness centers (called "facilities") both in the United States and internationally.  All franchised Gold's Gym® facilities are, by definition, owned and operated by independent, third-party businesspeople who are otherwise not affiliated with GGF.  These third parties license the Gold's Gym® name and trademarks from GGF.  Plaintiff Michael P. Huyge ("Plaintiff") is a member of a franchised Gold's Gym® facility located in Scottsdale, Arizona.  This facility is owned and operated by defendant Fitness Alliance, LLC ("Fitness Alliance"), a Gold's Gym® franchisee.  The complaint alleges that Fitness Alliance violated 47 U.S.C. § 227, the Telephone Consumer Protection Act ("TCPA"), and that GGF is vicariously liable for Fitness Alliance's acts.

Plaintiff's claims against GGF are legally deficient for several reasons, and should be dismissed.  Under the pleading standards announced by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and relevant substantive case law, Plaintiff's allegations fail to pass muster:

▪    First, Plaintiff concedes that he provided his cell-phone number to Fitness Alliance on his gym Membership Agreement.  As a matter of law, this act constitutes "prior express consent" for Fitness Alliance to contact him using an automated telephone

-2-

1  dialing system ("ATDS" or "auto-dialer") or otherwise.  That fact guts Plaintiff's TCPA

2  claim in its entirety.  A violation of the TCPA occurs only when a call is made to a person

3  without that person's consent.  Because Plaintiff gave his prior express consent to be

4  contacted, he has no claim under the TCPA.

5        ▪    Additionally, although Plaintiff seeks to hold GGF liable for the alleged

6  acts of its franchisee, Fitness Alliance, he fails to plead facts or a proper legal theory that

7  would allow GGF to be held vicariously liable for Fitness Alliance's conduct.  On the

8  contrary, the few facts that are alleged in the complaint establish as a matter of law that

9  GGF is *not* vicariously liable for Fitness Alliance's alleged acts because, as Plaintiff

10  concedes, GGF did not control Fitness Alliance's marketing activities, including its

11  alleged call(s) to Plaintiff.  Further, Plaintiff's assertion of a "ratification" theory against

12  GGF falls well short of the mark, because he does not sufficiently allege that Fitness

13  Alliance was purporting to act on GGF's behalf when it made the offending calls.

14        ▪    Finally, Plaintiff's class-action allegations are totally conclusory and plainly

15  fail to satisfy the *Twombly*/*Iqbal* test.  The complaint merely parrots the elements of Rule

16  23 without pleading any supporting facts that would make the allegations of numerosity,

17  predominance, typicality, or superiority facially plausible.

18       For all of these reasons, and the others stated below, Plaintiff's complaint, as it

19  relates to GGF, should be dismissed in its entirety.

20  **II.**    **SUMMARY OF PLAINTIFF'S ALLEGATIONS**

21       Plaintiff is a Gold's Gym® member.  Complaint, ¶ 22.  He signed a membership

22  agreement with Fitness Alliance in which he provided his cellular telephone number.  *Id.*

23  Plaintiff claims, however, that the membership agreement is "devoid of any reference of

24  Defendants [sic] intent to contact Plaintiff on his cellular telephone, whether through use

25

26

QB\25444148.1

of an ATDS or otherwise." *Id.*  A true and correct copy of the Membership Agreement to which Plaintiff refers is attached as **Exhibit A**.

The Membership Agreement is dated September 11, 2013, and is signed by Plaintiff.  The agreement asks for Plaintiff's "Tel." and "Work Tel."  Plaintiff provided the same telephone number for each: (480) 526-0975.  No other phone numbers appear anywhere on the Membership Agreement.  Thus, in two separate instances on the Membership Agreement, Plaintiff provided his cell-phone number to Fitness Alliance  – as he concedes.

Notwithstanding this undisputed fact, the complaint also alleges that in September 2013 Fitness Alliance placed "numerous" calls to him and other purported class members "without their express consent."  Complaint, ¶ 18.  There is, however, only one call described in the complaint.  That call, according to Plaintiff, contained a prerecorded message, which he allegedly received on September 23, 2013.  *Id.*, ¶ 20.  This was just 12 days after he signed the Membership Agreement, **Exhibit A**.  According to the complaint, the purpose of the call was to offer Plaintiff the opportunity to add a friend or family member to his new Gold's Gym® membership at a discounted price.  *Id.*, ¶ 19.  Plaintiff refers to this as "The Gold's Gym Friends and Family Telemarketing Campaign" (see heading "B" on page 5 of the complaint) but there is no evidence that Fitness Alliance, much less GGF, ever called it that (or that there ever was a "campaign," for that matter).

Plaintiff then goes on to confirm two facts that are critical to this motion.  First, he acknowledges that Fitness Alliance is a franchisee of GGF.  *Id.*, ¶ 23.  This, however, was a fact of which Plaintiff was already aware.  The Membership Agreement that Plaintiff signed contained the following language:

> Gold's Gym Franchising, LLC, or any related corporation is not the owner of this Gold's Gym facility.  The owner of this facility is a franchisee of Gold's Gym Franchising, LLC, and is permitted to use the Gold's Gym

QB\25444148.1

marks in connection with its operation.  Neither Gold's Gym Franchising, or any related corporation, is contractually or otherwise liable to you, as the owner is solely liable for the debts and obligations of this facility.

*See* **Exhibit A** at p. 1.  Thus, Plaintiff knew that he was dealing solely with Fitness Alliance, not GGF, and that GGF was not liable to him "contractually or otherwise."  In his complaint, Plaintiff refers to this very language, when he once again mentions the Membership Agreement.  Complaint, ¶ 23.  Second, Plaintiff's complaint acknowledges that GGF did not control Fitness Alliance's marketing activities.  Plaintiff specifically alleges, in fact, that GGF "provided Fitness Alliance *carte blanche* to conduct its own advertising campaigns."  Complaint, ¶ 23.

Recognizing that GGF did not make the calls and had no control over them, Plaintiff alleges that GGF "ratified the conduct of Fitness Alliance."  *Id.*, ¶ 24.  This alleged "ratification" included "accepting [GGF's] share of revenue derived from Fitness Alliance's telemarketing campaigns" and by failing to stop Fitness Alliance's allegedly "unlawful activities."  *Id.*

### III.   ARGUMENT

####    A.   The applicable legal standards.

Under Federal Rule of Civil Procedure 8(a), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly,* 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Likewise, Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  "Threadbare recitals of the elements of a cause

QB\25444148.1

1   of action, supported by mere conclusory statements, do not suffice," because such thin

2   pleading "does not unlock the doors of discovery for a plaintiff armed with nothing more

3   than conclusions." *Id.* At 678-79.  A motion to dismiss ought to be granted where a

4   complaint lacks either a cognizable legal theory or facts sufficient to support a cognizable

5   legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988).  As

6   discussed more fully below, Plaintiff has plainly failed to meet this standard here.

7       Finally, while the Court generally may not consider matters "outside" the

8   complaint when ruling on a motion to dismiss, Fed. R. Civ. P. 12(d), there is one

9   important exception that applies here: "material which is properly submitted as part of the

10  complaint may be considered" on a motion to dismiss.  *Sams v. Yahoo! Inc.,* 713 F.3d

11  1175, 1179 (9th Cir. 2013); *see also Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir. 1994)

12  (quoting *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th

13  Cir. 1990)).  As a corollary to that rule, "documents whose contents are alleged in

14  a complaint and whose authenticity no party questions, but which are not physically

15  attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to

16  dismiss." *Branch*, 14 F.3d at 454.  And "[s]uch consideration does 'not convert the

17  motion to dismiss into a motion for summary judgment." *Id.* (quoting *Romani v.

18  Shearson Lehman Hutton*, 929 F.2d 875, 879 n.3 (1st Cir. 1991)).

19      Thus, in this case, the Court may properly consider the Membership Agreement,

20  **Exhibit A**.  Plaintiff mentions it in his complaint at least twice, and even paraphrases its

21  contents at one point. *See* Complaint, ¶¶ 20, 23.  Importantly, Plaintiff contends that the

22  Membership Agreement itself establishes his lack of "express consent" to be contacted on

23  his cell phone by Fitness Alliance. *Id.*, ¶ 20.  As such, the Court may properly consider it

24  here without converting this motion to dismiss into one for summary judgment.

25

26

**B.      Plaintiff gave Fitness Alliance "prior express consent" to contact him.**

This is a classic instance of a plaintiff literally "pleading himself out of court."  In the amended complaint, Plaintiff candidly admits that he gave his cell phone number to Fitness Alliance.  But he argues that he did not give his consent to be contacted, via an auto-dialer or otherwise.  But regardless of his subjective intent, the *legal effect* of this act was unmistakably clear – he gave his express consent to be contacted at that number, via auto-dialer or otherwise.  Accordingly, there is no basis for his TCPA claim.

The complaint contains two counts, both premised on alleged violations of the TCPA.  *See* Complaint, ¶¶ 28-57.  That statute prohibits the use of an ATDS or prerecorded voice "to make any call [without prior express consent] ... to any telephone number assigned to a ... cellular telephone service."  47 U.S.C. § 227(b).  Although express consent is an affirmative defense to Plaintiff's TCPA claim, not an element of the claim itself, the Court may properly consider the defense when deciding GGF's motion to dismiss.  *E.g.*, *Sams*, 713 F.3d at 1179 (affirmative defense may be considered on a 12(b)(6) motion where the defense is apparent from the face of the complaint); *Aderhold v. Car2go N.A., LLC,* 2014 WL 794802, at *3 (W.D. Wash. Feb. 27, 2014) (express consent is an affirmative defense to a TCPA claim, not an element of the claim).

If a person gives his or her cell phone number in the course of a business transaction, the act of giving the number constitutes "prior express consent," and therefore relieves the defendant of liability under the TCPA.  There is a slew of cases to that effect, all of which dismiss TCPA cases very much like this one.  *See*, *e.g.*, *Pinkard v. Wal-Mart Stores, Inc.*, 2012 WL 5511039 (N.D. Ala. Nov. 9, 2012) (plaintiff's act of giving Wal-Mart pharmacy her cellular telephone number constituted express consent to receive automated text messages from Wal-Mart); *Baird v. Sabre Inc.*, 2014 WL 320205 (C.D. Cal. Jan. 28, 2014) (plaintiff's act of giving her cell-phone number to Hawaiian

Airlines to book a flight was express consent to receive flight-notification text messages from Hawaiian's contractor, Sabre Inc.); *Roberts v PayPal, Inc.*, 2013 WL 2384242 (N.D. Cal. May 30, 2013) (plaintiff's act of providing his cell-phone number to receive information about PayPal's mobile services constituted express consent to receive automated text messages regarding those same services); *Greene v. DirecTV, Inc.*, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010) (giving cellular number to Equifax for fraud alerts was express consent to be contacted on that number, using prerecorded messages, regarding such alerts); *Aderhold* 2014 WL 794802, at *8 (by providing his cell-phone number in connection with his membership application, the plaintiff "clearly and unmistakably consented to being contacted about [that application]" at that number).[1]  In each of these cases, the court held that the very act of providing the number – regardless of whether the plaintiff intended it – constituted express prior consent.  The defendant was not required to expressly notify the plaintiff that he or she would be contacted. Indeed, once the number was given, nothing more was required.

In a February 2014 Western District of Washington decision, *Aderhold v. Car2go N.A., LLC*, the court explained that the interpretation of "prior express consent" articulated in these and other cases comports with simple common sense.  2014 WL 794802, at *8.  In that case, not unlike this one, the plaintiff provided his cell phone

---

[1] As the district court in *Baird* (and many other courts) points out, the notion that providing one's phone number constitutes express consent to be contacted at that number has its roots in a 1992 FCC decision, *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752 (1992) ("1992 Order").  In the 1992 Order, the FCC ruled that, "[i]f a call is otherwise subject to the prohibitions [against using an autodialer, and other rules targeting telemarketing], *persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given*, absent instructions to the contrary" (emphasis added).  *See Baird*, 2014 WL 320205, at *5 (quoting the 1992 Order, and noting that "the FCC appears to have intended its 1992 Order to provide a definition of 'prior express consent' in the TCPA").

number in connection with a membership application (in that case, a car-sharing service). *Id.* at *1.  The court dismissed his TCPA claim, stating that it "defied logic" for the plaintiff to argue that, once he provided that phone number to the defendant, "he did not consent to be contacted regarding his membership application."  *Id.*, at *8.  It went on to say that:

> [w]hen people provide their telephone numbers in commercial transactions, it would be odd to imagine that they do not consent to being contacted for purposes of completing that transaction.  Could a person who provided a telephone number to a delivery service seriously contend that she had not consented to be telephoned by the service to inform her that her package was en route?  Could a person who provided a telephone number to a mechanic claim that she did not consent to be called (or texted) when her car was repaired?  According to [plaintiff], if the delivery service and mechanic used an autodialer to make those calls, then they broke the law. The court is confident that Congress did not intend that result when it passed the TCPA.

*Id.*

Given the overwhelming weight of authority on this issue, the Court's decision here is an easy one.  Plaintiff indisputably gave his cell phone number to Fitness Alliance. That act constitutes prior express consent under the TCPA.  Accordingly, GGF cannot be liable to Plaintiff under the TCPA – even if it could somehow be held legally accountable for calls that *Fitness Alliance* allegedly made (which it cannot, as explained below).  The Court should, therefore, dismiss Plaintiff's TCPA claim against GGF.

**C.**  **The complaint fails to plead a viable theory of vicarious liability against GGF.**

**1.**  **As Plaintiff alleges, GGF did not control Fitness Alliance's marketing activities; accordingly, GGF is not liable for Fitness Alliance's alleged violations of the TCPA.**

By signing the Membership Agreement, Plaintiff knew that, (1) the Gold's Gym® facility from which he had purchased a membership was not owned by GGF, (2) Fitness

QB\25444148.1

1    Alliance's only connection to GGF was that of a franchisee, and (3) Plaintiff had no

2    business relationship with GGF.  Despite having this knowledge, Plaintiff attempts to

3    hold GGF liable for calls that, according to the complaint, *were made by Fitness Alliance,*

4    *not GGF*.  But Plaintiff does not articulate any theory of liability that would allow him (or

5    other members of the class) to hold GGF liable for the acts of Fitness Alliance.

6         A franchisor is not normally vicariously liable for the tortious or otherwise

7    wrongful acts of its franchisee simply because it granted the franchisee a license to use its

8    name and business system.  *See*, *e.g.*, *Pona v. Cecil Whittaker's, Inc*., 155 F.3d 1034,

9    1036 (8th Cir. 1998) (noting that, "the mere fact that a franchisor's sign appears on a

10   building and the employees within that building wear uniforms bearing the franchisor's

11   logo and insignia" does not mean that the franchisor is liable for anything and everything

12   the franchisee does).  Instead, vicarious liability may occur "only if the franchisor has

13   control or a right of control over the daily operation of the specific aspect [or

14   "instrumentality"] of the franchisee's business that is alleged to have caused the harm."

15   *Kerl v. Dennis Rasmussen, Inc.*, 682 N.W.2d 328, 332 (Wis. 2004); *see also Courtland v.*

16   *GCEP-Surprise, LLC*, 2013 WL 3894981, at *5-8 (D. Ariz. July 29, 2013) (applying

17   Arizona law, and predicting that its courts would adopt the test set forth in *Kerl*).

18        The rule articulated by *Kerl* is the majority rule in the United States.  *E.g.,*

19   *Courtland*, 2013 WL 3894981, at *5 (calling it the "predominant test"); *Gray v.*

20   *McDonald's USA, LLC*, 874 F. Supp.2d 743, 752 (W.D. Tenn. 2013) (calling *Kerl*'s

21   "instrumentality rule" the "predominant test" for determining whether a franchisor is

22   liable for the tortious acts of its franchisees); *Depianti v. Jan-Pro Franchising Int'l, Inc.*,

23   990 N.E.2d 1054, 1064 (Mass. 2013) ("The 'instrumentality' test adopted by the *Kerl*

24   court accords with the approach of the majority of courts that have considered vicarious

25

26

QB\25444148.1

1  liability in the context of the franchise relationship.").  Arizona state courts have not yet

2  had an opportunity to weigh in on *Kerl*'s instrumentality test.

3        However, Judge Snow in the *Courtland* case predicted that Arizona courts would

4  adopt *Kerl*'s reasoning.  In *Courtland*, the plaintiff worked as a bartender and server at a

5  franchised Buffalo Wild Wings restaurant, and alleged that she was subjected to sexual

6  discrimination, harassment, and retaliation by the restaurant's general manager and an

7  assistant manager.  2013 WL 3894981, at *1.  She filed a complaint alleging Title VII

8  claims against the franchisee, GCEP-Surprise, LLC, and also against two franchisor

9  entities, Buffalo Wild Wings, Inc. and Buffalo Wild Wings International Inc.

10 (collectively, "Buffalo Wild Wings").  *Id.,* at *2.  She alleged, among other things, that

11 Buffalo Wild Wings was vicariously liable for the managers' alleged harassment.  *Id.*

12 The court rejected this argument.  Finding the instrumentality test to be the "'predominant

13 test' for holding a franchisor vicariously liable," the court concluded that, although

14 Buffalo Wild Wings, "maintained strict guidelines as to the presentation and operation of

15 the Restaurant," that fact did "not establish, without more, that [it] had control over the

16 [r]estaurant's managerial staff."  *Id.*, at *6.  Since Buffalo Wild Wings did not hire, fire,

17 or supervise the managers – the "instrumentality" that caused harm to the plaintiff – it

18 could not be held vicariously liable for their alleged harassment.  *Id.*, at *7.  Accordingly,

19 the court granted summary judgment in favor of Buffalo Wild Wings on plaintiff's

20 claims.[2]

21       Here, the federal statute under which the plaintiff is suing is different, but the

22 analysis is the same.  Plaintiff wishes to hold GGF vicariously liable for Fitness

23 Alliance's alleged violations of the TCPA.  Yet, Plaintiff concedes in his complaint that

24 _____

25 [2] Applying Arizona law, a court in the Southern District of New York has likewise predicted that Arizona would follow the *Kerl* rule.  *See Karnauskas v. Columbia Sussex*

26 *Corp.*, 2012 WL 234377 (S.D.N.Y. Jan. 24, 2012).

QB\25444148.1

GGF did not control Fitness Alliance's telemarketing activities – the "instrumentality" that is alleged to have harmed him.  In paragraph 23 of the complaint, Plaintiff alleges that GGF gave Fitness Alliance "*carte blanche* to conduct its own advertising campaigns" (italics in original).  Thus, Plaintiff acknowledges that GGF did not *cause* Fitness Alliance to make the offending telemarketing calls.  But even more important, *GGF also lacked control over Fitness Alliance's marketing activities*.  After all, giving someone "carte blanche" to do something means giving that person full discretionary authority to perform the act in any way the person pleases.  That's the dictionary definition of "carte blanche."[3]  So, not only has Plaintiff not pled a viable theory of vicarious liability, he has pled facts that totally *undermine* any such claim against GGF – namely, GGF's lack of control over Fitness Alliance's alleged telemarketing activities.

## 2.    Plaintiff's "ratification" theory is facially deficient.

In highly conclusory fashion, Plaintiff also alleges that GGF "ratified" Fitness Alliance's allegedly unlawful acts.  In paragraph 24, Plaintiff contends that GGF "ratified the conduct of Fitness Alliance by accepting the benefits thereof, including but not limited to accepting its share of revenue derived from Fitness Alliance's telemarketing campaign, and otherwise encouraging, participating in or failing to take steps to curtail its unlawful activities."  These allegations fail to meet the *Twombly*/*Iqbal* standard because they are mere legal conclusions, devoid of any factual support.[4]  Among other things,

---

[3]  Merriam-Webster, http://www.merriam-webster.com/dictionary/carte%20blanche (last visited March 5, 2014).

[4]  The same can be said of allegations such as those contained in paragraphs 9 and 39, each of which allege, in conclusory fashion, that each defendant was the agent of the other and ratified or affirmed the other's acts.  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  *In re White Elec. Designs Corp. Sec. Lit.*, 416 F. Supp.2d 754, 761 (D. Ariz. 2006); *see also Scovil v. Medtronic, Inc.*, 2014 WL 502923, at *3 (D. Ariz. Feb. 7, 2014) (the court considers only "non-conclusory 'factual content,' and reasonable inferences

QB\25444148.1

1  there are no facts alleged to support the conclusion that there were, in fact, "benefits," and

2  that GGF "accept[ed]" them.

3         That aside, Plaintiff also misunderstands the concept of ratification as it exists

4  under Arizona law.  "Ratification is the affirmance by a person of a prior act which did

5  not bind him but which was done, or professedly done on his account, whereby the act …

6  is given effect as if originally authorized by him."  *United Bank v. Mesa N. O. Nelson*

7  *Co.*, 121 Ariz. 438, 440, 590 P.2d 1384, 1386 (1979) (quoting *Restatement (Second) of*

8  *Agency* § 82).  "'[R]atification does not result from the affirmance of a transaction with a

9  third person *unless the one acting purported to be acting for the ratifier*.'"  *Keams v.*

10 *Tempe Tech. Inst., Inc.*, 993 F. Supp. 714, 719 (D. Ariz. 1997) (quoting *Restatement*

11 *(Second) of Agency* § 85(1)) (emphasis added).

12        Here, Plaintiff's complaint – including, by reference, the Membership Agreement

13 – does not plausibly allege that Fitness Alliance purported to act on behalf of GGF (i.e.,

14 as GGF's agent).  As an initial matter, Plaintiff's complaint makes it clear that GGF did

15 not control Fitness Alliance's marketing activities.  That allegation is wholly inconsistent

16 with an agency relationship.  If Fitness Alliance was acting on GGF's behalf, as GGF's

17 agent, GGF would control the means and manner in which Fitness Alliance was

18 conducting those activities.  The principal's right and ability to control the agent's

19 conduct is the very essence of an agency relationship.  *E.g.*, *Goodman v. Physical*

20 *Resource Engineering, Inc.*, 229 Ariz. 25, 29, ¶ 12, 270 P.3d 852, 856 (Ct. App. 2011)

21 (noting that "agency" is a legal relationship in which "one person (a 'principal') manifests

22 assent to another person (an 'agent') that the agent shall act on the principal's behalf and

23 subject to the principal's control, and the agent manifests assent or otherwise consents so

24

25 from that content" when deciding a motion to dismiss) (quoting *Moss v. U.S. Secret Serv.*,

26 572 F.3d 962, 969 (9th Cir. 2009)).

-13-

to act" (quoting *Restatement (Third) of Agency* § 1.01 (2006)).  So, again, the allegations of Plaintiff's complaint dispel any notion that Fitness Alliance acted, or purported to act, on GGF's behalf as its agent.

Further, the Membership Agreement makes clear that Fitness Alliance's only relationship with GGF was that of a franchisee, and that relationship extended no further than its rights to use GGF's name and trademarks.  The agreement stated, in no uncertain terms, that Fitness Alliance owned the gym that Plaintiff joined, and that it had merely licensed the Gold's Gym® name and trademarks for use in the gym's operation.  Further, the agreement states that, "[n]either [GGF], or any related corporation, is contractually or otherwise liable to you."  Thus, if Fitness Alliance was making telemarketing calls to generate new and additional business by contacting its own members and soliciting them to persuade their friends and family to join (which is not conceded), *it was acting for its own benefit and on its own behalf*, not for and on behalf of GGF.  No other conclusion can be drawn from these facts.

Because the "purporting to act on behalf of the ratifier" element is not adequately pled in Plaintiff's complaint, Plaintiff has failed to state a proper ratification theory against GGF.  *See Keams*, 993 F. Supp. at 719 (rejecting ratification theory because there was no evidence that the defendant technical school was acting on the bank's behalf by, among other things, processing student loans issued by the bank and "realiz[ing] the benefits" of those loans).

**D.**      **Plaintiff's class-action allegations fall far short of the *Twombly/Iqbal* standard.**

The pleading requirements announced in *Twombly* and *Iqbal* apply to all matters alleged in the complaint, including the class-action allegations.  *See, e.g.*, *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig*, 2013 WL 3791509, *4 (S.D. Ill. Jul. 18, 2013)

("*Pradaxa*") (finding class allegations too conclusory to meet *Twombly* standards); *Nicholas v. CMRE Fin. Servs., Inc.*, 2009 WL 1652275, *4 (D.N.J. Jun. 11, 2009) ("After *Twombly*, courts in this circuit have found that class allegations must also comply with Rule 8(a) in order to proceed to class discovery." (collecting cases)).

Put another way, merely reciting the elements of Rule 23 is not enough to open the doors to class discovery.  In the *Pradaxa* case, for example, the court found that the class claims, as pled, were "woefully insufficient," because "[t]he plaintiff's class allegations amount to nothing more than a mere recital of the elements in Rule 23 in relation to an unidentified class."  2013 WL 3791509, *4.  As a result, the court dismissed the class claims under Rule 12(b)(6). *Id.*

The Court should reach the same conclusion here.  Even a cursory review of the complaint reveals that, at most, Plaintiff is merely guessing that other class members exist.  For instance, he alleges that Fitness Alliance made "numerous, autodialied telephone calls" to Plaintiff and other class members – although, tellingly, Plaintiff reveals the specifics of only *one* of these "numerous" alleged calls.  Complaint, ¶ 18.  But beyond this conclusory allegation, there are no facts alleged to support this "numerous calls" allegation.  Without supporting factual allegations, Plaintiff's pleading amounts to little more than a guess that there are other class members who received prohibited calls, or that those individuals are so numerous that class treatment could be warranted.

Likewise, in the "Class Action Allegations" portion of the complaint, paragraphs 26 through 37, the allegations do little more than recite the elements of Rule 23(a) and 23(b)(3), which also plainly fails to meet *Twombly*'s pleading standards.  *See Pradaxa*, 2013 WL 3791509, *4; *see also Nicholas*, 2009 WL 1652275, *4.[5]  As one example,

---

[5] In *Nicholas*, the court granted the defendants' motion for a more definite statement under Rule 12(e) because it found that, "the Complaint does not set forth a sufficient factual basis for its class allegations; indeed, the class allegations under Rule 23 in the

QB\25444148.1

1   Plaintiff alleges that the "members of the class are so numerous or geographically diverse
2   … such that joinder of all members is impracticable," apparently to bring the case within
3   the requirements of Rule 23(a)(1)  Complaint, ¶ 28.  But there are no *facts* alleged to
4   support that bare legal conclusion, other than Plaintiff's other conclusory allegation that
5   Fitness Alliance made "numerous" calls to Plaintiff and others.

6        As another example, Plaintiff alleges that his claims are typical of the claims of the
7   class, as required under Rule 23(a)(3), yet there are no facts to support this allegation,
8   either.  Complaint, ¶ 30.  Instead, Plaintiff is merely parroting the language of the rule.
9   Since the complaint reveals absolutely nothing about the existence, location, or number of
10  the other class members, and what injury they have supposedly suffered, there is no way
11  for the Court to gauge whether this allegation is plausible.  Thus, Plaintiff's typicality
12  allegation is necessarily deficient under *Twombly*.

13       Finally, Plaintiff alleges that class treatment is a superior method of adjudicating
14  the putative class members' claims, apparently to satisfy Rule 23(b)(3)'s superiority
15  requirement.  *See* Complaint, ¶ 35.  But without supporting facts, these unadorned
16  allegations are, on their face, conclusory and deficient.  In short, they too fail to nudge
17  Plaintiff's superiority contention "across the line from conceivable to plausible."
18  *Twombly*, 550 U.S. at 570.

19  **IV.    CONCLUSION**

20       For the reasons set forth above, Plaintiff's complaint should be dismissed under
21  Rule 12(b)(6) because it fails to state a claim upon which relief may be granted.

22  / / /

23  / / /

24

25  Complaint are phrased as legal conclusions based on the language of the class action
26  pleading requirements."

-16-

1    RESPECTFULLY SUBMITTED this 13th day of March, 2014.

2                          QUARLES & BRADY LLP

3

4                          By: /s/ Jeffrey H. Wolf
                              Jeffrey H. Wolf
5                              Aaron C. Schepler

6                          Attorneys for Defendant Gold's Gym
                           Franchising, LLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on March 13, 2014, I electronically transmitted the attached

3  document to the Clerk's Office using the CM/ECF System for filing and delivered a copy

4  of the foregoing via United States Mail to the following:

5

6                  Todd Jackson
Rebecca Reed
7                  Jackson & Oden, P.C.
3573 East Sunrise Drive, Suite 125
8                  Tucson, Arizona 85718
tjackson@jacksonodenlaw.com
9                  rreed@jacksonodenlaw.com

10

11                  William M. Sweetnam
Sweetnam LLC
12                  582 Oakwood Avenue, Suite 200
Lake Forest, Illinois 60045
13                  WMS@sweetnamllc.com

14                  Attorneys for Plaintiffs

15                  Steven J. Brown
16                  Steve Brown & Associates, LLC
1414 East Indian School Road, Suite 200
17                  Phoenix, Arizona 85014
18                  sbrown@sjbrownlaw.com

19                  Attorneys for Defendant Fitness Alliance, LLC

20

21

22  */s/ Donna Marie Lockwood*

23

24

25

26

QB\25444148.1