JACKSON & ODEN, P.C.
Todd Jackson (ASB No. 012202)
tjackson@boj-law.com
Rebecca Reed (ASB No. 023419)
rreed@boj-law.com
3573 East Sunrise Drive, Suite 125
Tucson, Arizona 85718
(520) 884-0024

SWEETNAM LLC
William M. Sweetnam (admitted *pro hac vice*)
wms@sweetnamllc.com
582 Oakwood Avenue, Suite 200
Lake Forest, Illinois 60045
(847) 559-9040

*Attorneys for Plaintiff Michael P. Huyge*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| MICHAEL P. HUYGE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOLD'S GYM FRANCHISING LLC and FITNESS ALLIANCE, LLC,<br><br>Defendants. | Case No.: CV-13-02378-PHX-SRB<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS ON BEHALF OF GOLD'S GYM FRANCHISING, LLC (DKT #33)**<br><br>ORAL ARGUMENT REQUESTED |

**INTRODUCTION**

Pursuant to Fed. R. Civ. P. 12(b)(6), Gold's Gym seeks dismissal of Plaintiff's First Amended Class Action Complaint ("Complaint") for failure to state a claim upon which relief may be granted. The current complaint (which was amended to substitute Gold's Gym Franchising LLC ("Gold's Gym"), the franchisor of Fitness Alliance, LLC ("Fitness

Alliance"), for Gold's Gym International, Inc., a holding company) states a claim for violation of the Telephone Consumer Protection Act ("TCPA"). As alleged in the Complaint, Gold's Gym and Fitness Alliance LLC engaged in a robocalling campaign to encourage their customer base to upgrade their memberships. These calls were placed to the cellular telephone numbers of Plaintiff and other class members without their express consent in violation of the Section 227(b) of the TCPA.

## ARGUMENT

### I. STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the Complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1207 (9th Cir. 2013). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where the allegations "possess enough heft" to suggest a plausible

entitlement to relief, the case may proceed. *See Twombly,* 550 U.S. at 557. "Asking for plausible grounds to infer [elements of a claim] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [such elements]." Id. at 556. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly,* 550 U.S. at 556.

## II. The Complaint States a Claim for Violation of the Telephone Consumer Protection Act of 1991.

Plaintiff's Complaint states a claim for violation of the Telephone Consumer Protection Act of 1991 ("TCPA").

### A. Statutory and Regulatory Background of the TCPA

In December 1991, Congress adopted the Telephone Consumer Protection Act ("TCPA") by adding a new section – 47 U.S.C. § 227 – to the Communications Act of 1934. *See* Pub. L. No. 102-243, 105 Stat. 2394 (1991). Among other things, the TCPA regulates the use of automatic telephone dialing systems[1] and the use of prerecorded or artificial voice messages. As relevant here, the TCPA provides that it is "unlawful for any person within the United States–(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic

---

[1] The Communications Act defines an automatic telephone dialing system as "equipment which has the capacity–(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).[2]

In addition to enforcement in lawsuits by the FCC, *see* 47 U.S.C. § 503, and state attorneys general, *see* 47 U.S.C. § 227(g), the TCPA creates a private right of action to enforce its terms. *See* 47 U.S.C. § 227(b)(3) (providing for damages and/or injunctive relief).

### B. Express Consent Is an Affirmative Defense and the Lack Thereof Is Not an Element of a TCPA Claim.

The elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)), *cert. denied*, 133 S. Ct. 2361, 185 L. Ed. 2d 1068 (U.S. 2013). Whether Plaintiff gave the required prior express consent is an affirmative defense to be raised and proved by Defendants, however, and is not an element of Plaintiff's TCPA claim. *Connelly v. Hilton Grant Vacations Company, LLC*, 56 Communications Reg. (P&F) 231, at *3 (citing 23 F.C.C.R. 559, 565 (Dec. 28, 2007) ("[W]e conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent."); *Ryabyshchuk v. Citibank (South Dakota) NA,*

---

[2] The FCC's implementing rule similarly provides that "[n]o person or entity may: (1) initiate any telephone call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) [t]o any telephone number assigned to a . . . cellular telephone service . . . ." 47 C.F.R. § 64.1200(a)(1)(iii).

2011 WL 5976239 (S.D. Cal. Nov. 28, 2011) (Gonzalez, C.J.) ("[T]he FCC recognized the heavy burden a consumer might face in trying to prove that he *did not* provide prior express consent."); *Gutierrez v. Barclays Grp.,* 2011 WL 579238 (S.D. Cal. Feb. 9, 2011). Thus, Plaintiff's Complaint need not allege the absence of consent, and "[a]ccordingly, a motion for summary judgment—rather than a motion to dismiss—is the proper place for the [defendant] to establish that the [Plaintiffs'] claim fails due to the presence of prior express consent." *Ryabyshchuk*, 2011 WL 5796239, at *5.

### C. The Complaint Alleges that Plaintiff Did Not Consent to Receiving Autodialed or Prerecorded Message Calls on His Cellular Telephone.

Although it is not an element of proof, the Complaint alleges no fewer than *ten* times that Defendants placed autodialed, prerecorded telephone calls to his cellular number *without his prior express consent*. *See* Complaint ¶¶ 1, 18, 27, 30, 42, 47, 49, 58, 63, 65. These factual allegations are sufficient to give fair notice and to enable Defendants to defend themselves effectively. *Starr*, 652 F.3d at 1212. Taken as true, these allegations plausibly suggest an entitlement to relief, such that it is not unfair to allow this lawsuit to proceed. *See Id.*

Gold's Gym misrepresents the allegations of Plaintiff's Complaint. For example, Gold's Gym falsely states, "Plaintiff concedes that he provided his cell-phone number to Fitness Alliance on his gym Membership Agreement." Br. at 2; see also Br. at 3 ("[H]e provided his cellular telephone number."); Br. at 4 ("Plaintiff provided his cell-phone number to Fitness Alliance – as he concedes."; Id. ("In the amended complaint, Plaintiff candidly admits that he gave his cell phone number to Fitness Alliance."). Gold's Gym does not provide a single reference to Plaintiff's Complaint in support of its conclusion

-5-

that Plaintiff provided his cellular telephone number to either defendant, because there is no such allegation in Plaintiff's Complaint, nor is there any allegation from which it can be inferred that Plaintiff provided his cellular telephone number to Gold's Gym. In essence, Gold's Gym asks the Court to infer facts that are not alleged in Plaintiff's Complaint, thereby construing the Complaint in the light most favorable to it. *Cf. Schlegel*, 720 F.3d at 1207 (on a motion to dismiss for failure to state a claim, the court accepts as true all well-pleaded factual allegations in the complaint, which are construed in the light most favorable to the plaintiffs).

### D. The Membership Agreement Does Not Contain Plaintiff's Express Consent to Receive Automated or Prerecorded Telemarketing Calls.

Gold's Gym does not dispute that its Membership Agreement contains no reference to consent to receive calls (or text messages) on the customer's cellular telephone number. Indeed, the Membership Agreement makes no reference at all to cellular telephones, cellular telephone numbers, automatically dialed calls, prerecorded messages or artificial voice calls of any kind. *Cf. Jordan v. ER Solutions, Inc.*, 900 F. Supp. 2d 1323, 1327 (S.D. Fla. 2012) (motion to dismiss TCPA granted where contract stated, "'We may use automated technology for the purposes of contacting you, including but not limited to automatic dialing or similar equipment.'").

Here, it has not even been established that Plaintiff provided his cell phone number to either Defendant and, if he did, under what circumstances. *Cf. Bresko v. M & T Bank Corp.*, 2013 WL 5328241 (M.D. Fla. Sept. 23, 2013) ("The complaint does not attach any documents showing the circumstances under which the Plaintiff gave her mobile cell number to M & T; therefore the Court cannot evaluate whether she actually gave consent.")

-6-

(citing *Mais v. Gulf Coast Collection Bureau, Inc.*, 2013 WL 1899616 (S.D. Fla.2013) (holding that patient did not provide prior express consent for defendants radiology clinic and its debt collector to use his cell phone number when his wife provided it on his hospital admission forms). Gold's Gym's argument requires the Court to construe the allegations of the Complaint *against* Plaintiff and in the light most favorable to *Defendant*. This is the opposite of the standard to be applied in the context of a motion to dismiss. *See Schlegel*, 720 F.3d at 1207 (when considering a motion to dismiss, the court must accept all of the Complaint's allegations as true, construing them in the light most favorable to the plaintiff). Even if it is proven that Plaintiff provided his number, at best this would be *implied* consent to be called, as explained in more detail in Section F, *infra*.

### E. The 2008 FCC Ruling in Favor of Debt Collectors Does Not Apply Here.

In 2008, the FCC addressed a petition filed by ACA International, a trade organization of credit and collection companies, which asked the agency to "clarify" that the TCPA's prohibition against autodialed or prerecorded calls to wireless telephone numbers does not apply to "*creditors and collectors* when calling wireless telephone numbers to recover payments for goods and services received by consumers." *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of ACA International for Clarification and Declaratory Ruling,* Declaratory Ruling, 23 FCC Rcd 559, 563 (¶ 8) (2008) ("2008 FCC Ruling") (emphasis added). The FCC concluded that "the provision of a cell phone number to a creditor, *e.g., as part of a credit application*, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." 23 FCC Rcd at 564 (¶ 9) (emphasis added).

Because the agency found that "autodialed and prerecorded message calls to wireless numbers provided by the called party *in connection with an existing debt* are made with the 'prior express consent' of the called party," the FCC "clarif[ied] that such calls" by creditors "are permissible." *Id*. (emphasis added). *Accord id*. at 559 (¶ 1). The FCC also "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer *to the creditor*, and that such number was provided during the transaction *that resulted in the debt owed*." 23 FCC Rcd at 564-65 (¶ 10) (emphasis added). The FCC determined that "[c]alls placed by *a third party collector* on behalf of that creditor are treated as if the creditor itself placed the call." *Id*. (emphasis added). Needless to say, this is not a debt collection case, and the 2008 FCC Ruling is inapplicable.

### F. The Cases Cited by Gold's Gym In Support of Its Implied "Express" Consent Theory are Otherwise Inapposite.

Assuming *arguendo* the applicability of the 2008 FCC Ruling, the Cases Cited by Gold's Gym that apply it are factually distinguishable. The first of these, *Pinkard v. Wal-Mart Stores, Inc.*, 2012 WL 5511039 (N.D. Ala. Nov. 9, 2012), is an unpublished Alabama district court decision granting a motion to dismiss in which the plaintiff alleged that a Wal-Mart pharmacy. That case is distinguishable because the complaint alleged that Wal-Mart asked for the plaintiff's cellular telephone number for the express purpose of contacting her regarding her prescription, and she agreed. *See Id.* at *2. Plaintiff's Complaint contains no such allegations, nor is there any evidence of how Gold's Gym acquired Plaintiff's number or what it's stated purpose was.

*Baird v. Sabre, Inc.*, 2014 WL 320205 (C.D. Cal. Jan. 28, 2014), is an unpublished California district court opinion granting a motion for summary judgment, not a motion to dismiss. Summary judgment was later entered in *Baird* with the benefit of numerous declarations and other evidence not available here. *See, e.g., id.* at *6 (citing declarations). Also, it was undisputed that the plaintiff herself inputted her cellular telephone number in the "Mobile Phone" field on the passenger information page of the airline's website. *Id.* at *6. In contrast, the Membership Agreement submitted by Gold's Gym, which appears to be prefilled, contains no mobile or cellular telephone number fields. *See* Motion, Exh. A (Dkt #33-1). Nor is there any evidence of who completed the form or how the number listed was obtained. This does not satisfy Gold's Gym's burden of proving its prior express consent affirmative defense.

*Roberts v. PayPal, Inc.*, 2013 WL 2384242 (N.D. May 30, 2013), yet another unpublished summary judgment opinion, is no more helpful. In that case, "plaintiff expressly agreed to [a] user agreement on two occasions" that "made clear that PayPal could contact its users by phone." *Id.* at *5. Again, those facts are not present here.

In *Green v. DirecTV, Inc.*, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010), also a summary judgment slip opinion made with the benefit of discovery, including deposition testimony, the plaintiff contacted Equifax and asked that a fraud alert be placed in her credit report. It was undisputed that she provided her cellular telephone number as the preferred manner for potential creditors to contact her and verify her identity. *Id.* at *3. She sued when a third-party vendor of DirecTV called her cell phone and played a prerecorded message asking her to confirm whether she had ordered satellite television from DirecTV. *Id.* at *2. Again, these are not the facts of this case.

-9-

Finally, in *Aderhold v. Car2go N.A.*, LLC, 2014 WL 794802 (W.D. Wash. Feb. 27, 2014), yet another unpublished decision, the court rested its decision granting the defendant's motion for judgment on the pleadings on the fact that the plaintiff affirmatively assented to the terms and conditions of a car rental agreement that explicitly disclosed the company's practice of sending text messages. *Id.* at *7. As mentioned previously, the Membership Agreement employed by Gold's Gym makes no such disclosures nor does it mention cellular telephone numbers, calls or text messages. *See* Motion, Exh. A. *Aderhold* is inapposite.

### G. Other Courts Have Correctly Rejected the Implied Consent Reasoning of the Cases Cited by Gold's Gym.

Gold's Gym fails to acknowledge the published decisions which soundly reject the implied consent reasoning of the slip opinions it cites. For example, Gold's Gym fails to cite *Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F.Supp.2d 1226, 1238 (S.D. Fla. 2013), a published opinion, in which the court rightly refused to substitute implied consent for the express consent requirement of the TCPA, stating:

> "[E]xpress consent" as "[c]onsent that is clearly and unmistakably stated." Black's Law Dictionary 346 (9th ed. 2004). It also defines "express" as "[c]learly and unmistakably communicated; directly stated." *Id.* at 661. By contrast, "implied consent" is defined as "[c]onsent inferred from one's conduct rather than from one's direct expression," or "[c]onsent imputed as a result of circumstances that arise . . . .

The FCC, and industry in general, understands what is required to meet Congress' demand of express consent. For example, in 2007 the FCC "encourage[d] creditors to include language on credit applications and other documents informing the consumer that, by providing a wireless telephone number, the consumer consents to receiving autodialed

and prerecorded message calls from the creditor or its third party debt collector at that number." 23 F.C.C.R. 559 at ¶ 10, n. 37. Including such language here would have likely satisfied the express consent requirement; the absence of similar language on Plaintiff's Membership Agreement highlights why his consent, if any, can only be determined by implication.

Nor does Gold's Gym cite *Satterfield v. Simon & Schuster,* 569 F.3d 946 (9th Cir. 2009), a case that demonstrates the type of language that typifies express consent. There, the "prior express consent" exemption of 47 U.S.C. § 227(b)(1)(A) was met where a non-party marketing agency had sent a promotional text message to a customer who, when filling out an online application for a free ringtone, had checked a box stating "[y]es! I would like to receive promotions from Nextones affiliates and brands. Please note, that by declining you may not be eligible for our FREE content." *Id.* at 948. The plaintiff had also provided his initials and clicked on a "submit" button, above which appeared the words "[b]y clicking Submit, you accept that you have read and agreed to the Terms and Conditions." *Id.* Those terms and conditions, in turn, provided that Nextones could call the applicant's cell phone number "in connection with any text message offering or other campaign." *Id.* This, too, demonstrates that those who wish to use autodialers or prerecorded messages with their customers, whether lending customers or otherwise, are perfectly capable of garnering the express consent of those customers, something Gold's Gym did not even attempt to do. *See, e.g., Jordan*, 900 F. Supp. 2d at 1327 ("'We may use automated technology for the purposes of contacting you, including but not limited to automatic dialing or similar equipment.'").

Similarly, in *Thrasher-Lyon v. CCS Commercial, LLC*, 2012 WL 3835089, at *5 (N.D. Ill. Sept. 4, 2012), the court noted the absurdity of implied "express" consent, calling such interpretation the plain language of the TCPA "bizarre":

> Bizarre would be to read "express consent" as "implied consent." In ordinary parlance, there is no such thing as "implied express consent"—that is an oxymoron. Giving out one's phone number, at least outside of the special relationship sanctioned by the FCC, is not "express" consent to besiegement by automated dialing machines. One "expresses" consent by, well, expressing it: stating that the other party can call, or checking a box on form or agreeing to terms of service that explicitly permit automated telephone contact. *See Satterfield v. Simon & Schuster,* 569 F.3d 946, 955 (9th Cir. 2009) ("Express consent is consent that is clearly and unmistakably stated.") (citation omitted). * * * The language of the statute makes consent the exception, not the default.

*See also Lusskin v. Seminole Comedy, Inc.*, 2013 WL 3147339 (S.D. Fla. June 19, 2013) ("It might be reasonable to infer that a person who gives his or her cell number to another party has consented to later be contacted, by that party, at that number through an automatic-dialing-system. But this is just an inference (*i.e.,* a conclusion reached by considering the circumstances and deducing a logical consequence from a person's conduct). Because this conclusion must be inferred from conduct, that necessarily means that permission was not directly stated (*i.e.,* it was not expressed)). *See also* Black's Law Dictionary 661 (9th ed.2009) (defining 'expressed' as being 'not left to inference')." To be sure, the mere presence of Plaintiff's telephone number on the Membership Agreement (which Gold's Gym maintains it has nothing to do with) is not sufficient proof of Plaintiff's express consent to receive the type of telemarketing robocall at issue here.

### III. The Complaint Sufficiently Alleges that Gold's Gym Is Vicariously Liable for Fitness Alliance's Violation of the TCPA.

Other franchisors have been unsuccessful in obtaining dismissal of TCPA claims. For example, Papa John's failed in its bid to defeat the TCPA claim of a consumer who received text messages (considered "calls" within the meaning of the TCPA) sent to the customers of a Papa John's franchisee, who in turn employed a third-party vendor to actually send the messages. *See Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 564 (W.D. Wash. 2012) (Plaintiff alleges that Papa John's is both directly and vicariously liable for the text messages sent by OnTime4U; she has therefore alleged an injury that is fairly traceable to Papa John's.") Plaintiff's Complaint alleges Gold's Gym "was the actual or apparent agent, employee or representative of [Fitness Alliance]." Complaint ¶ 9. The Complaint further alleges Fitness Alliance, "in doing the acts or omitting to act as alleged in th[e] Complaint, was acting in the course and scope of . . . its actual or apparent authority pursuant to such agencies . . . ." *Id.* Moreover, the Complaint alleges Fitness Alliance acted with the apparent and/or actual authority of Gold's Gym, who gave it authority to use the Gold's Gym trade name, trademark and/or service mark . . ., including in connection with the telemarketing campaign . . . ." *Id.* at ¶ 23. Finally, the Membership Agreement expressly states, "The undersigned Member hereby purchases a Club membership from *Gold's Gym . . .*," not Fitness Alliance. (Dkt. 33-1 at 2) (emphasis added).

"[W]hile a seller does not generally "initiate" calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) . . . that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by DISH Network, LLC, 28 FCC Rcd 6574, at ¶ 1 (2013) (footnote omitted). The FCC cited "the authority to use the seller's trade name, trademark and service mark," among

other things, "as illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations." *Id.* at ¶ 46 (footnote omitted). Here, the Complaint alleges "Fitness Alliance acted with the apparent and/or actual authority of Gold's Gym, who gave it authority to use the Gold's Gym trade name, trademark and/or service mark . . ., including in connection with the telemarketing campaign . . . ." Complaint ¶ 23. In addition to allowing Fitness Alliance to use the Gold's Gym trademark and/or trade name on the Membership Agreement, the robocalls made by Fitness Alliance stated that the call was made on behalf of "Gold's Gym." *See* Complaint ¶ 19. As the Complaint alleges these acts were done with the apparent or actual authority of Gold's Gym, construing the facts in the light most favorable to Plaintiff, the motion to dismiss should be denied.

It is undisputed that TCPA allows for vicarious liability. For example, FCC regulations state that under the TCPA, "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements . . . ." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, *10 F.C.C.R. 12391, 12407 (Aug. 7, 1995)*. Thus, the TCPA creates a form of vicarious liability making an entity liable when a third party sends unsolicited communications on its behalf in violation of the Act. *Id.; see also In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1256-1257 (S.D. Cal. 2012) ("an entity can be held liable under the TCPA even if it hired another entity to send the messages."); *Satterfield,* 569 F.3d at 955 (reversing grant of summary judgment in

favor of Simon & Schuster despite the fact that it seemed to play no role in physically sending the messages). Thus, there is ample support for allowing Plaintiff's claims against Gold's Gym seeking to hold liable for the TCPA violations of Fitness Alliance to proceed.

Gold's Gym states without explanation that by signing the Membership Agreement, Plaintiff knew that the Gold's Gym he visited was not owned by it. Br. at 9. However, it is undisputed that the Membership Agreement only refers to Gold's Gym and contains no references to Fitness Alliance whatsoever. *See* Motion, Exh. A (Dkt #33-1). Aside from the fact that Plaintiff's knowledge is a question of fact not appropriate for determination at the motion to dismiss phase, the cases Gold's Gym cites are tort cases that do not address vicarious liability under the unique provisions of the TCPA. Gold's Gym's principally relies on the "instrumentality" test articulated by the Wisconsin Supreme Court in *Kerl v. Dennis Rasmussen, Inc.*, 682 N.W.2d 328 (Wis. 2004). However, none of Plaintiff's claims involve negligent supervision or the other torts at issue in the cases citing *Kerl*. To be sure, causation is not an element of Plaintiff's claims.

**IV. Gold's Gym's Attack on the Allegation that It Ratified the Conduct of Its Fitness Alliance Ignores the Well-Pled Allegations of the Complaint.**

Gold's Gym calls Plaintiff's allegations that "Gold's Gym . . . ratified the conduct of Fitness Alliance by accepting the benefits thereof, *including but not limited to accepting its share of revenue derived from Fitness Alliance's telemarketing campaign*, and otherwise encouraging, participating in or failing to take steps to curtail its unlawful activities," Complaint ¶ 24 (emphasis added), "mere legal conclusions." Br. at 12. This is "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Indeed, Gold's Gym completely ignores the italicized language above when

it says "there are not facts alleged to support the conclusion that there were, in fact, 'benefits,' and that [Gold's Gym] 'accepted them.'" Br. at 13.

## V. Dismissal of the Complaint's Class Action Allegations Prior to Discovery Is Not Appropriate.

"[T]he granting of motions to dismiss class allegations before discovery has commenced is rare." *Kisliuk v. ADT Sec. Servs., Inc.*, 263 F.R.D. 544, 547 (C.D. Cal. 2008) (citation omitted). "'[D]ismissal of class allegations at the pleading stage should be done rarely . . . .'" Id. (citation omitted). "[T]he better course is to deny such a motion because 'the shape and form of a class action evolves only through the process of discovery.'" *Id.* (citation omitted). This should be obvious, for example, as things such as "the exact number and identity of Class members is unknown to Plaintiff at this time and can only be ascertained from information and records in the possession, custody or control of Defendants." Complaint ¶ 28.

The cases Defendant cites demonstrate the unusual circumstances under which motions to strike or dismiss class action allegations are allowed. In *In re Pradaxa (Dabigatran Etexilate) Products Liab. Litig.*, 2013 WL 3791509, *4 (S.D. Ill. July 18, 2013), the court noted, "Under other circumstances, the Court might agree with the plaintiff and find that [defendant's] motion, with regard to the class allegations, is premature." That court only found that the plaintiff's class allegations were "woefully deficient" because they failed to even define the class, referring to members of the class as "those similarly situated." *See Id.* n.5.

Plaintiff's class allegations here, on the other hand, are detailed in 22 paragraphs, including subparagraphs, consisting of more than 700 words. *See* Complaint ¶¶ 26-37.

Thus, the Complaint does not "merely recite the elements of Rule 23," as Gold's Gym contends. Br. at 15. *Cf. Pradaxa,* 2013 WL 3791509, *4 ("The plaintiff's class allegations amount to nothing more than a mere recital of the elements in Rule 23 in relation to an unidentified class."). At this stage of the litigation, before any discovery has occurred, that is sufficient to satisfy the plausibility standard set forth in *Twombly*, if it applies (Gold's Gym cites no cases other than a single New Jersey slip opinion in support of this proposition, *see* Br. at 15, and Plaintiff is aware of none).

**VI. The Fact that Gold's Gym Has Been Cited by the FCC for TCPA Violations Before Makes Plaintiff's Claims All the More Plausible.**

This is not Gold's Gym first encounter with the TCPA. As alleged in the Complaint, Gold's Gym's direct parent, Gold's Gym International, received a citation from the Federal Communications Commission on October 31, 2008, for violating 47 U.S.C. § 227(b)(1)(A). *See* Complaint ¶ 2. Thus, it is at least plausible that Gold's Gym is liable for the same type of violation here.

**CONCLUSION**

For all of the foregoing reasons, and for any other reasons that may appear to the Court, Gold's Gym's motion should be denied. In the event the Court grant's the motion, Plaintiff hereby requests leave to replead.

Dated this 30th day of April, 2014.    Respectfully submitted,

SWEETNAM LLC

By:   s/ William M. Sweetnam

JACKSON & ODEN, P.C.
Todd Jackson

*Attorneys for Plaintiff Michael P. Huyge*

-17-

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on April 30, 2014, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF system for filing. Pursuant to Section D(2-3) of the CM/ECF Manual, a Notice of Electronic Filing should be sent to the following:

> Jeffrey H. Wolf
> jeffrey.wolf@quarles.com
> Aaron C. Schepler
> aaron.schepler@quarles.com
> Quarles & Brady LLP
> Two North Central Avenue
> Phoenix, Arizona 85004
>
> *Attorneys for Defendant Gold's Gym Franchising LLC*
>
> Steven J. Brown
> sbrown@sjbrownlaw.com
> Steven D. Nemecek
> snemecek@sjbrownlaw.com
> STEVE BROWN & ASSOCIATES, LLC
> 1414 East Indian School Road, Suite 200
> Phoenix, Arizona 85014
>
> *Attorneys for Defendant Fitness Alliance, LLC*

By:     s/ William M. Sweetnam