Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
TELEPHONE 602.229.5200

Jeffrey H. Wolf (#011361)
jeffrey.wolf@quarles.com
Aaron C. Schepler (#019985)
aaron.schepler@quarles.com

Attorneys for Defendant Gold's Gym Franchising LLC

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Michael P. Huyge, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Gold's Gym Franchising LLC and Fitness Alliance, LLC,<br><br>Defendants. | CV-13-2378-PHX-SRB<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF GOLD'S GYM FRANCHISING LLC** |

**I.     INTRODUCTION**

It is abundantly clear from the response that Plaintiff cannot overcome the complaint's many pleading deficiencies. None of Plaintiff's arguments provide a legitimate basis to deny Gold's Gym Franchising LLC's ("GGF") well-taken motion to dismiss. First and foremost, Plaintiff's undisputed act of providing his cell phone number to Fitness Alliance undeniably constituted prior express consent to be called at that number. The law is clear: if a person gives his or her cell phone number in the course of a business transaction to another party, the act of giving the number constitutes "prior

1  express consent," and therefore relieves the defendant of liability under the TCPA.
2  Moreover, Plaintiff has failed to sufficiently plead any legal basis for holding GGF
3  vicariously liable for the alleged acts of its franchisee, Fitness Alliance, LLC.  For those
4  reasons and the others outlined below, the Court should dismiss Plaintiff's complaint in
5  its entirety.

**II. ARGUMENT**

    **A. The Court may properly consider the Membership Agreement.**

In his response, Plaintiff attempts to argue that, for purposes of this motion, the Court cannot consider the fact that he provided his cell phone number to Fitness Alliance. This is so, Plaintiff argues, because "there is no such allegation in Plaintiff's Complaint, nor is there any allegation from which it can be inferred that Plaintiff provided his cellular telephone number to Gold's Gym [sic]." Response, at p. 6.  In essence, Plaintiff is saying, "because I didn't affirmatively allege it in the complaint, the Court cannot consider that fact when ruling on this motion to dismiss."

Plaintiff is plainly wrong; no affirmative allegation is needed for the Court to find that Plaintiff's claims fail as a matter of law.  Significantly, Plaintiff does not deny that the complaint alludes to the Membership Agreement at least twice, and even quotes from this document.  Plaintiff also does not dispute that the copy of the Membership Agreement attached to GGF's response is a true and genuine copy of the one he signed. Because Plaintiff refers to the Membership Agreement in the complaint – and no party challenges its authenticity – the Court may properly consider it when ruling on GGF's motion to dismiss.  *E.g.*, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.").  Put another way, the contents of the

Membership Agreement become part of the complaint for purposes of ruling on GGF's 12(b)(6) motion.

Notably, Plaintiff does not deny that the Membership Agreement contains his cell phone number. Thus, not only may the Court consider the Membership Agreement, the fact that his phone number appears on the document is a tacit admission that Plaintiff gave his cell phone number to Fitness Alliance. It is true, as Plaintiff contends, that the Court must draw all reasonable inferences in favor of the non-moving party when ruling on a motion to dismiss. But here, *the only reasonable inference that can be drawn is that Plaintiff voluntarily provided his phone number to defendant Fitness Alliance as part of the membership sign-up process*. There is no other *plausible* explanation for how his phone number came to appear on that document, nor has Plaintiff offered one.

### B. Plaintiff's act of voluntarily providing his cell phone number is dispositive of his TCPA claim.

This undisputed fact is fatal to Plaintiff's TCPA claim. If a person gives his or her cell phone number in the course of a business transaction to another party, the act of giving the number constitutes "prior express consent," and therefore relieves the defendant of liability under the TCPA.[1] As discussed in GGF's motion to dismiss, there is a veritable mountain of case law that has reached this precise result. *See*, *e.g.*, *Pinkard v. Wal-Mart Stores, Inc.*, 2012 WL 5511039 (N.D. Ala. Nov. 9, 2012); *Baird v. Sabre Inc.*, 2014 WL 320205 (C.D. Cal. Jan. 28, 2014); *Roberts v PayPal, Inc.*, 2013 WL 2384242 (N.D. Cal. May 30, 2013); *Greene v. DirecTV, Inc.*, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010); *Aderhold v. Car2go N.A., LLC*, 2014 WL 794802 (W.D. Wash. Feb. 27, 2014). In each of these cases, the court held that the mere act of providing the

---

[1] Although lack of consent is an affirmative defense, not an element of Plaintiff's TCPA claim, the Court can nevertheless consider it when ruling on a motion to dismiss. *See* GGF's Motion to Dismiss, at p. 7 and the cases cited therein.

number – regardless of whether the plaintiff subjectively intended it – constituted express prior consent to be called at that number.

Plaintiff's attempt to distinguish these cases is unpersuasive. With regard to the *Pinkard*, *Roberts*, *Greene*, and *Aderhold* cases, for instance, Plaintiff argues that the plaintiffs in each case also expressed their intent to be called in ways other than providing their phone numbers. Even assuming that to be true, which is questionable, the courts in each of these cases held that the mere act of providing his or her phone number was sufficient, in and of itself, to constitute "express consent" under the TCPA.

Plaintiff also weakly attempts to distinguish *Baird v. Sabre Inc., supra,* by pointing out that the online form the plaintiff in that case completed had a space specifically designated "Mobile Phone." This case, Plaintiff contends, is different because the fields in the Membership Agreement merely say "Tel." and "Work Tel.," but not "Mobile Phone." This is undoubtedly a distinction without a difference. If anything, the fact that Plaintiff provided the same number for both fields shows conclusively that being called on his cell phone was Plaintiff's preferred manner of being contacted. Logically, no other inference can be drawn from these facts.

### C. GGF is not relying on the 2008 FCC "creditor" ruling.

In the response, Plaintiff sets up a straw man and then proceeds to knock it down. On pages 7 and 8, he argues that the FCC's 2008 declaratory ruling "in favor of creditors" (the "2008 Order") does not apply here – suggesting that GGF's arguments are based on that ruling. Not so. As GGF's motion made clear, it is relying on the FCC's *1992* ruling, which had nothing to do with creditors and is squarely on point here.

The notion that providing one's phone number constitutes express consent to be contacted at that number has its roots in the 1992 decision, *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752

-4-
QB\26910076.2

(1992) ("1992 Order"). In the 1992 Order, the FCC ruled that, "[i]f a call is otherwise subject to the prohibitions [against using an autodialer, and other rules targeting telemarketing], *persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given*, absent instructions to the contrary" (emphasis added). The court in *Baird* noted that "the FCC … intended its 1992 Order to provide a definition of 'prior express consent' in the TCPA" 2014 WL 320205, at *5. Thus, according to the 1992 Order, giving one's cell phone number in the course of a business transaction – as Plaintiff did here – is "prior express consent" to be contacted by autodialer or otherwise. It is this ruling that GGF is relying on, not the 2008 ruling "in favor of creditors."[2] Under the 1992 Order, then, Plaintiff gave his express consent to be contacted when he gave Fitness Alliance his cell phone number.

Plaintiff also launches an improper collateral attack on the 1992 Order by arguing that the act of giving his phone number to Fitness Alliance should be deemed "implied consent," not express consent, regardless of what the FCC said in its 1992 Order. *See* Response, at pp. 8-10. Plaintiff's argument is misplaced and inappropriate. As discussed in the preceding section of this reply memorandum, the vast majority of cases construing the TCPA agree that the 1992 Order's interpretation of the statute – i.e., that giving one's phone number to another party in the course of a business transaction is express consent – is not only what the FCC intended, but it also has the force of law. Indeed, the 1992 Order must be followed by district courts because only the courts of appeal have the authority to overturn an FCC ruling like the 1992 Order. *E.g.*, *Chavez v. Advantage Grp.*,

---

[2] Arguably, the 2008 Order would also apply here because, by signing the Membership Agreement, Plaintiff agreed to pay Fitness Alliance a sum of money in monthly installments, thus creating a debt. Under that view of the facts, Plaintiff provided his cell phone number to a creditor in connection with a credit transaction, which would also constitute prior express consent for purposes of the TCPA.

-5-

1  959 F. Supp. 2d 1279, 1282 (D. Colo. 2013) ("Congress has vested in the federal courts of appeals 'exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of – all final orders of the Federal Communications Commission made reviewable by section 402(a) of Title 47.'" (quoting 28 U.S.C. § 2342(1))). Thus, this Court cannot accept Plaintiff's argument because doing so would effectively overrule the 1992 Order – something that only the courts of appeal have the authority to do.

Moreover, the handful of cases Plaintiff cites in support of his "implied consent" theory represents the minority view. In *Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp.2d 1226 (S.D. Fla. 2013), for example, the court concluded that it could disregard the FCC's *2008* Order – which, paradoxically, is the very ruling that Plaintiff says does not apply to this case. There, "[t]he [*Mais*] court stated, with little more than its own *ipse dixit* as support, that a proceeding under the TCPA was not an action to 'enjoin, set aside, annul, or suspend' an order of the Commission. Having thus characterized the proceeding before it, the court proceeded to review the 2008 FCC Ruling, finding it not entitled to *Chevron* deference." *Chavez*, 959 F. Supp. 2d at 1282.

*Mais* and cases like it have been roundly criticized. In *Chavez*, for example, the court stated it was "not inclined to engage in the semantical machinations which allowed the *Mais* court to bypass the jurisdictional boundary established by Congress." *Id*. The court therefore rejected *Mais*' holding, which essentially gutted the FCC's 2008 Order even though the court had no jurisdiction to do so. *See id.* ("Regardless of how the claim is brought before the court, the practical effect of accepting plaintiff's argument here would be to 'set aside, annul, or suspend' the 2008 FCC Ruling. I am without jurisdiction to effectuate that outcome."); *see also Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 419 n. 11 (E.D.N.Y. 2013) (rejecting *Mais*' reasoning). Indeed, as the *Levy* case makes clear, "the overwhelming majority of district courts that have considered

QB\26910076.2

this issue have found that the FCC's rulings … are binding on them," and cannot be reviewed or overturned except by the courts of appeal. *Id.* Thus, not only was *Mais* wrongly decided because it improperly disregarded an FCC ruling, it does not even purport to construe the FCC's *1992* Order, which is the FCC order upon which GGF relies in this case.

The two other outlier cases supporting Plaintiff's "implied consent" argument, *Thrasher-Lyon*[3] and *Lusskin*[4], have likewise been criticized and rejected. *See Aderhold*, 2014 WL 794802, at *6 (rejecting *Thrasher-Lyon*); *Chavez*, 959 F. Supp. 2d at 1281 n. 5 (rejecting *Lusskin*). *Lusskin*, as it turns out, was written by the same district judge that wrote the *Mais* opinion, Judge Robert N. Scola, Jr. of the Southern District of Florida. *See id*. So, in reality, there are only two federal judges – Judge Scola in Florida and Judge Tharp in Illinois – that have ever endorsed the type of argument that Plaintiff makes here. These judges' decisions stand in stark contrast to the "the overwhelming majority of district courts that have considered this issue[.]" 972 F. Supp. 2d at 419 n. 11. This Court should therefore reject Plaintiff's "implied consent" argument, which is based exclusively on these minority-view cases.

**D. Plaintiff's conclusory agency allegations do not add up to a viable theory of vicarious liability against GGF.**

As discussed in GGF's motion, Plaintiff attempts to hold GGF liable for calls that, according to the complaint, were admittedly made by Fitness Alliance. Everyone agrees that Fitness Alliance is a Gold's Gym® franchisee, but is not otherwise related to or controlled by GGF. Yet, Plaintiff's complaint does not allege any legal basis on which to hold GGF liable for the acts of its franchisee. And Plaintiff's response offers no credible reason for the Court to conclude otherwise.

---

[3] *Thrasher-Lyon v. CCS Commercial, LLC*, 2012 WL 3835089 (N.D. Ill. Sep. 4, 2013).
[4] *Lusskin v. Seminole Comedy, Inc.*, 2013 WL 3147339 (S.D. Fla. Jun. 19, 2013).

1. **The complaint fails to adequately plead an agency theory.**

The response leans heavily on the agency allegations of the complaint. But these allegations are, at best, a mishmash of factually unsupported legal conclusions. Plaintiff alleges, for instance, that Fitness Alliance was GGF's "actual or apparent agent, employee or representative of [Fitness Alliance]"; that Fitness Alliance was "acting in the course and scope of … its actual or apparent authority," and the like. *See* Response, at p. 13. The Court is not required, for purposes of this motion, to accept as true legal allegations or other factually unsupported matter contained in the complaint. *E.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation'"). As a result, these types of allegations do nothing to advance Plaintiff's vicarious-liability claim against GGF.

Plaintiff also emphasizes his allegation that GGF granted Fitness Alliance a license to use the Gold's Gym® name and trademarks. *See* Response, at pp. 13-14. This allegation establishes, at most, that Fitness Alliance is GGF's franchisee, a fact that no one disputes. And standing alone, this allegation is insufficient to plead a plausible claim that Fitness Alliance was GGF's *agent*. The mere fact that the franchisee uses the franchisor's name and trademarks is not enough to establish agency. If it were, every franchisee would be the agent of its franchisor regardless of the circumstances, which is simply not the law.[5] Rather, Plaintiff must plead something more than Fitness Alliance's

---

[5] Plaintiff cites *In the Matter of the Joint Petition Filed by DISH Network, LLC*, 28 FCC Rcd 6574, at ¶ 1, for the proposition that the use of another's trademarks may indicate an agency relationship. This very general statement from an FCC order does not displace

use of the trademarks – namely, that GGF controlled the activity that caused Plaintiff's alleged injury.

Indeed, Plaintiff does not quarrel with the general proposition that a franchisor is liable for the acts of a franchisee "only if the franchisor has control or a right of control over the daily operation of the specific aspect [or "instrumentality"] of the franchisee's business that is alleged to have caused the harm." *Kerl v. Dennis Rasmussen, Inc.*, 682 N.W.2d 328, 332 (Wis. 2004); *see also Courtland v. GCEP-Surprise, LLC*, 2013 WL 3894981, at *5-8 (D. Ariz. July 29, 2013) (applying Arizona law, and predicting that its courts would adopt the test set forth in *Kerl*). Instead, Plaintiff argues that the instrumentality test applies only to common-law torts – not federal statutory claims. *See* Response, at p. 15. The case law, however, squarely refutes this argument. The *Courtland* decision, which was handed down by Judge Snow last July, is but one example. There, the court rejected the plaintiff's Title VII claims based on the reasoning of *Kerl*. Notably, Plaintiff does not even attempt to distinguish *Courtland*.

If the instrumentality test can be applied to a federal statutory claim for employment discrimination, then it can also be applied to Plaintiff's federal TCPA claim. And as discussed extensively in GGF's motion, the complaint pointedly alleges that GGF did not control Fitness Alliance's marketing activities, including its alleged telemarketing. *See* Motion to Dismiss, at pp. 9-12. On the contrary, Plaintiff alleges that GGF gave Fitness Alliance free reign to conduct its own marketing activities however it saw fit. *See* Complaint, ¶ 23 (alleging that GGF gave Fitness Alliance "*carte blanche* to conduct its own advertising campaigns" (italics in original)). This admitted lack of control is fatal to

---

the well-established body of case law analyzing whether, and under what circumstances, a franchisee may be considered an agent of the franchisor.

-9-

Plaintiff's attempt to impose vicarious liability on GGF for Fitness Alliance's alleged violations of the TCPA.

The lone TCPA decision involving a franchisor that Plaintiff cites bears no resemblance to this case. *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012), was a ruling on the plaintiffs' motion for class certification. There, the franchisor defendants (collectively, "Papa John's") argued that the plaintiffs lacked Article III standing to sue because they had suffered no injury that was "fairly traceable to [Papa John's]." *See id.* at 564. The court disagreed because discovery revealed that Papa John's had *actively encouraged* its franchisees to hire a particular vendor to send unsolicited text messages to the putative class members. *Id.* ("Papa John's has produced documents that indicate that it did play some role in the franchisee-level decisions to hire [the vendor and defendant] OnTime4U."). Here, by contrast, Plaintiff has specifically alleged that GGF did *not* direct Fitness Alliance's advertising efforts, including any telemarketing it may have done. Thus, the *Papa John's* case does not support Plaintiff's vicarious-liability argument.[6]

### 2. **Plaintiff's complaint fails to sufficiently plead a "ratification" theory.**

In an attempt to defend his ratification claim, Plaintiff merely repeats the same conclusory allegation contained in the complaint – i.e., that GGF "ratified the conduct of Fitness Alliance by accepting the benefits thereof … or failing to take steps to curtail its unlawful activities." *See* Response, at p. 15 (*quoting* Complaint, ¶ 24). As discussed at length in GGF's motion to dismiss, these allegations are both conclusory (and therefore need not be accepted as true), and ignore well-established Arizona case law regarding

---

[6] Plaintiff also cites *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1255 (S.D. Cal. 2012). Although Jiffy Lube is a franchise system, the franchisor was not a defendant in that lawsuit.

-10-

ratification. *See* Motion to Dismiss, at pp. 12-14. Plaintiff completely fails to address these arguments in his response. Plaintiff's silence should be deemed a concession that GGF's position is meritorious.

### E. Plaintiff's class allegations do not meet the *Twombly/Iqbal* standard.

Plaintiff also attempts to rescue his conclusory class allegations by citing cases in which courts have held that class claims should "rarely" be dismissed at the pleading stage. *See* Response at pp. 16-17. But this is one of those rare cases. Although Plaintiff trumpets the fact that his class allegations consist of "more than 700 words," Response, at p. 16, those 700 words consist of little more than the text of Rule 23. Because Plaintiff's class allegations amount to "[t]hreadbare recitals of the elements of a cause of action," *Iqbal*, 556 U.S. at 678, they should be dismissed.

### F. The alleged "citation" does not make Plaintiff's claims more plausible.

As a parting shot, Plaintiff argues that because Gold's Gym International, Inc. ("GGI") – the parent of GGF's parent, Gold's Holding Corp. – allegedly received a TCPA citation from the FCC in 2008, his claims should be deemed more "plausible." For one thing, GGI is not a party to this action, so an alleged six-year-old citation against that entity is completely irrelevant. For another, even if the Court were to accept this allegation as true, for purposes of this motion, it would not diminish in any respect GGF's affirmative defense of prior consent. Nor would it cure the many pleading deficiencies that GGF has identified in Plaintiff's complaint. In short, the FCC citation is a non-issue.

## III. CONCLUSION

Based on the foregoing, Plaintiff's complaint should be dismissed under Rule 12(b)(6) because it fails to state a claim upon which relief may be granted.

///

///

QB\26910076.2

RESPECTFULLY SUBMITTED this 28th day of May, 2014.

> QUARLES & BRADY LLP
>
> By: /s/ Jeffrey H. Wolf
>     Jeffrey H. Wolf
>     Aaron C. Schepler
>
> Attorneys for Defendant Gold's Gym Franchising LLC

QB\26910076.2

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that on May 28, 2014, I electronically transmitted the attached |
| 3 | document to the Clerk's Office using the CM/ECF System for filing and delivered a copy |
| 4 | of the foregoing via United States Mail to the following: |

Todd Jackson
Rebecca Reed
Jackson & Oden, P.C.
3573 East Sunrise Drive, Suite 125
Tucson, Arizona 85718
tjackson@jacksonodenlaw.com
rreed@jacksonodenlaw.com

William M. Sweetnam
Sweetnam LLC
582 Oakwood Avenue, Suite 200
Lake Forest, Illinois 60045
WMS@sweetnamllc.com

Attorneys for Plaintiffs

Steven J. Brown
Steve Brown & Associates, LLC
1414 East Indian School Road, Suite 200
Phoenix, Arizona 85014
sbrown@sjbrownlaw.com

Attorneys for Defendant Fitness Alliance, LLC

*/s/ Donna Marie Lockwood*

-13-

QB\26910076.2